[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 12, 2004
THOMAS  K. KAHN
CLERK

No. 03-13707

D. C. Docket No. 01-03478-CV-CAP-1

CROWN MEDIA, LLC,

Plaintiff-Counter-
Defendant-Appellant,

versus

GWINNETT COUNTY, GA,

Defendant-Counter-
Claimant-Appellee.

Appeal from the United States District Court
for the Northern  District of Georgia

(August 12, 2004)

Before EDMONDSON, Chief Judge, HULL, Circuit Judge, and BUCKLEW[*],
District Judge.

HULL, Circuit Judge:

---

[*]Honorable Susan C. Bucklew, United States District Judge for the Middle District of
Florida, sitting by designation.

In this sign ordinance case, Plaintiff Crown Media appeals the district court's order declaring that its constitutional challenges to Defendant Gwinnett County's now repealed 1990 and 1999 sign ordinances are moot. This case involves a sign that Gwinnett County approved but now seeks to have removed. Crown Media sued to enjoin Gwinnett County from requiring it to take down its sign. After oral argument and review, we conclude that Crown Media's complaint is not moot. Thus, we reverse and remand this case to the district court.

## I. BACKGROUND

In this case, Crown Media challenges the constitutionality of Gwinnett County's now repealed 1990 and 1999 sign ordinances. The constitutionality of the current sign ordinance, enacted on August 28, 2001, is not involved in this case. Instead, Gwinnett County contends, and the district court concluded, that the enactment of the 2001 ordinance caused Crown Media's constitutional challenges to the repealed 1990 and 1999 ordinances to become moot.[1] To answer this mootness issue, we first review the events surrounding Crown Media's permits and erection of its sign.

---

[1] The 1990 and 1999 sign ordinances were in Article XI of Gwinnett County's Zoning Ordinance. The 2001 sign ordinance is in Chapter 86 of Gwinnett County's Zoning Ordinance. Throughout this opinion, our references to "ordinance" are to the sign ordinance section of the Zoning Ordinance.

2

## A.    1990 Ordinance

On September 11, 1998, Crown Media applied to Gwinnett County for a sign permit and a building permit for the construction of a sign on a 3.3 acre tract located at 4431 Peachtree Industrial Boulevard, zoned "M-1" for light industrial. Gwinnett County issued Crown Media both a sign permit and a building permit on September 17, 1998.[2]

At the time of Crown Media's application, Gwinnett County's ordinance (the "1990 ordinance") required this type of sign to be: (1) at least 300 feet from a residential zoning district and school, (2) at least seventy-five feet from a right-of-way, and (3) no more than forty feet in height. The dimensions in Crown Media's plans submitted with its sign application complied with the 1990 ordinance. Thus, Crown Media applied for a sign and building permit to erect a sign whose dimensions complied with the 1990 ordinance.

After obtaining permits, Crown Media paid $100,000 to PBJ Development Company ("PBJ") for the right to erect and maintain a sign on PBJ's property. Crown Media paid $32,515 to an independent contractor who completed the sign

---

[2]Although the actual sign and building permits are not in the record, the parties agree that on September 17, 1998, Gwinnett County issued these permits for the sign shown in Crown Media's submitted plans. The record does contain a schematic entitled "Site Plan as Submitted for Permits," and the dimensions in that schematic comply with the 1990 sign ordinance.

in March 1999. The contractor, however, did not erect the sign in exact compliance with Crown Media's plans. Specifically, the sign, as built, is: (1) seventeen and one-half feet closer than the approved placement to a residential zoning district of 300 feet; (2) closer than seventy-five feet to the nearest right-of-way; and (3) seven feet in excess of the approved height of forty feet.[3] Notwithstanding the sign's <u>non-adherence</u> to the 1990 ordinance, the issued permits, and the plans on which the permits were based, Gwinnett County allowed and approved the sign through the required inspections, and Gwinnett County issued a certificate of occupancy and a certificate of completion of the sign on May 13, 1999. Crown Media then placed advertising on its sign.

**B.     1999 Ordinance**

After Gwinnett County issued the 1998 permits and 1999 certificates, Gwinnett County amended its sign ordinance on June 29, 1999 (the "1999 ordinance"). The required setback from the right-of-way and the height limitation remained the same in the 1990 and 1999 ordinances. The 1999 ordinance,

---

[3]Different measurements of the deviations from the approved plans are referenced in various parts of the record. The measured deviations referenced above are from Gwinnett County's March 15, 2000, letter discussed later. In any event, neither party disputes that deviations from Crown Media's approved plans in this approximate amount exist in the height and location requirements referenced above. We note that the letter does not mention the right-of-way violation, which was brought up later during litigation.

however, increased the required setback distance for billboards from a residential zoning district, school, or daycare center from 300 feet to 500 feet.

The 1999 ordinance also changed an aspect of the permit process for billboards within the "M-1" zoning districts. The 1990 ordinance had provided that billboards may be permitted as "an allowed use" within the "M-1" districts. Gwinnett County, Ga., Ordinances art. XI, § 1113.1(1) (1990).[4] The 1999 ordinance, however, provided that "[b]illboards may be permitted . . . by special use permit within the M-1 district." Gwinnett County, Ga., Ordinances art. XI, § 1113.1(1) (1999).

## C.    Complaints About the Sign

Crown Media did not receive any complaints about its sign during the initial ten months after its May 13, 1999, completion. On March 15, 2000, however, Phyllis Humrich, the Gwinnett County Zoning Compliance Manager, sent Crown Media a letter alleging that "several violations exist concerning the installation, placement, and lighting of the billboard."[5] Although written in 2000, Humrich's

---

[4]The 1990 ordinance stated that billboards "may be permitted . . . as an allowed use within the C-2, C-3, M-1 and M-2 districts if located on properties that are adjacent to principal arterials, major arterials or state or national highways, provided that such highways are not designated as residential arterials as shown in the Gwinnett County Comprehensive Plan." Gwinnett County, Ga., Ordinances art. XI, § 1113.1(1) (1990).

[5]After the enactment of the 1999 ordinance, Gwinnett County received a complaint regarding the height and location of Crown Media's sign on September 24, 1999. Gwinnett

letter specifically noted that the sign violated the forty-foot height limitation, the 300 foot setback requirement, and the illumination regulations: all requirements of the 1990 ordinance in effect when the 1998 permits issued.[6]  Thus, Gwinnett County originally faulted Crown Media for not complying with the 1990 ordinance.  Prior to receipt of Humrich's March 15, 2000, letter, Crown Media believed that the contractor constructed its sign in accordance with its plans, which complied with the 1990 ordinance.

**D.     May 19, 2000, Meeting**

A meeting about the alleged violations occurred on May 19, 2000.  Humrich informed Crown Media that the sign's height should be reduced to forty feet and its head should be cantilevered or rotated so that all portions of the sign would be

---

County prepared a survey of the area on October 20, 1999.  There is no claim that Gwinnett County advised Crown Media of any problems until Humrich's March 15, 2000, letter.

[6]Humrich's March 15, 2000, letter stated as follows:
- The total height approved for this sign is 40'.  As measured, the sign is 47.01 feet high.
- Regulations existing at the time of permit approved [sic] required the sign to be placed a minimum of 300' from any residential subdivision (current requirements are 500').  The sign is only 282.63' from the edge of Berkeley Lake Estates, Unit 4.
- Section 1110 of the Gwinnett County Zoning Resolution states that the light from any illuminated sign shall not be of an intensity or brightness which will interfere with the peace, confor [sic], convenience, and genreal [sic] welfare of residents or occupants of adjacent properties.  We have had numerous complaints regarding the intensity of the lights on this sign.

located at a minimum of 300 feet from any residential zoning district.[7] According to Crown Media, Humrich further advised that these changes could be made under the existing sign and building permits issued in 1998, and requested evidence that the sign could be safely altered to cause it to be located at a minimum of 300 feet from a residential subdivision. Crown Media assured Humrich that it would comply with her requests.

Crown Media then gave Gwinnett County a June 12, 2000, letter from the sign builder stating (1) that the sign could be moved to conform with Gwinnett County's requirements, and (2) that such construction could be completed in approximately three months.

**E.    July 6, 2000, Notice to Remove Sign**

In response to the June 12, 2000, letter, Humrich sent Crown Media a July 6, 2000, notice stating that its sign violated Gwinnett County's sign ordinance and must be removed within thirty days to avoid further legal action. The notice stated that "the sign structure is in violation of the Gwinnett County Zoning Resolution Section 1113.1 and must be removed." The notice did not specifically state

---

[7]At this meeting between Humrich and Crown Media, Humrich did not express any concern with respect to the sign's distance from the right-of-way. However, in its pleadings, Gwinnett County claims the sign is less than seventy-five feet from the nearest right-of-way.

whether Gwinnett County relied on a violation of the 1990 or 1999 ordinance or both in determining that the billboard must be removed.[8]

After receiving Gwinnett County's July 6, 2000, notice, Crown Media appealed to the Gwinnett County Zoning Board of Appeals ("ZBA"). In that appeal, Crown Media claimed: (1) that Gwinnett County was impermissibly applying new zoning regulations enacted after the issuance of the permits and certificates of occupancy and completion; (2) that this was an illegal attempt to enforce a new law retroactively; (3) that the 1990 and 1999 ordinances were unconstitutional in any event; and (4) that Crown Media had a vested property right to maintain its sign. Crown Media asked the ZBA (1) to overturn the removal notice and (2) to order that Crown Media could complete construction of its sign in strict compliance with the 1990 ordinance in effect when its 1998 permits were issued.

---

[8]The parts of § 1113.1 in the 1990 ordinance that Crown Media concedes its sign violated are the height and setback requirements. The parts of § 1113.1 in the 1999 ordinance of which Crown Media's sign could be considered to be in violation are also the height and setback requirements. Further, the 1999 ordinance prohibits billboards in "M-1" zoning areas except by special use permit, which Crown Media applied for but was denied.

The ZBA denied Crown Media's appeal on August 9, 2000.[9]  Crown Media appealed the ZBA's decision to the Superior Court of Gwinnett County in an action styled Crown Media, LLC v. Gwinnett County, Ga., No. 00-A-8227-4 (Ga. Sup. Ct. filed Sept. 6, 2000).  In that action, Crown Media claims that the 1990 and 1999 ordinances are unconstitutional and void, and that it has vested property rights in its sign.  On March 4, 2002, the Gwinnett County Superior Court stayed that action until this pending federal litigation concludes.

**F.      August 21, 2001, Application for Special Use Permit**

While the state court action was pending, Crown Media applied for a special use permit for its sign on August 21, 2001.  The 1999 ordinance added this special use permit requirement for billboards in "M-1" zoning areas.[10]  Crown Media initially sought variances under the 1999 ordinance for its sign, but was told by county officials that it must first obtain a "special use permit" under the 1999 ordinance, and then apply for variances.[11]  On November 27, 2001, the Gwinnett

---

[9]Although the ZBA denied Crown Media's appeal of the removal notice, Crown Media points out that according to its evidence, the sign permit, the building permit, the certificate of occupancy, and the certificate of completion have never been revoked by Gwinnett County.

[10]Although Crown Media made an effort to comply with the 1999 ordinance, it did not concede any of its constitutional challenges to the 1990 or 1999 ordinance.

[11]Through discovery in the Gwinnett County Superior Court action, Crown Media learned that from 1995 until 2001, Gwinnett County had granted 610 variance requests while denying only thirty-one (a 95 percent approval of variances).  After learning that information, Crown Media decided to apply for variances.

9

County Board of Commissioners held a public hearing at which Crown Media requested a special use permit with the intent to relocate its sign to a conforming location under the 1990 ordinance, a plan similar to that discussed with Humrich. The Board denied Crown Media a special use permit.

On the Board's behalf, a Commissioner made these findings: (1) that there was no legitimate reason stated for the approval of the special use permit application; (2) that allowing Crown Media's sign to remain would set an adverse precedent under the 1999 ordinance; (3) that the sign does not meet the 500 foot minimum setback from a residential zoning district or daycare center; (4) that the sign does not meet the minimum separation from another billboard; (5) that the sign adversely affects the visual quality and traffic safety along the Peachtree Industrial corridor; (6) that the sign violates policy LI.2 of the comprehensive plan land use element for light industrial areas; and (7) that the sign creates light problems.

Having been denied a special use permit under the 1999 ordinance, Crown Media contends that the 1999 ordinance, like the 1990 ordinance, is unconstitutional, and that thus no valid law precluded its sign when the permits were issued in 1998, when the sign was erected in 1999, when Gwinnett County

issued its removal notice in 2000, or when Crown Media applied for a special use permit in 2001.

## G. 2001 Ordinance

On August 28, 2001, Gwinnett County adopted a new sign ordinance (the "2001 ordinance") that altered significantly the substance of the 1999 ordinance to address constitutional concerns.[12]  The 2001 ordinance, however, kept in place the 500-foot setback restriction from a residential zoning district and daycare center, the seventy-five foot setback restriction from a right-of-way, and the forty foot height limitation.  Although Crown Media does not challenge the constitutionality of the 2001 ordinance, Gwinnett County contends that its enactment moots Crown Media's constitutional challenges to the 1990 and 1999 ordinances.

## H. Procedural History

On December 20, 2001, Crown Media filed this federal suit, seeking declaratory relief that the 1990 and 1999 ordinances are unconstitutional and injunctive relief against Gwinnett County's continued enforcement of the height

---

[12]The 2001 ordinance eliminated the distinction between billboards as off-premises or on-premises, eliminated duration restrictions for political signs, changed the permit exemptions, included a statement of purposes specifically for sign regulation, and expressly allowed noncommercial messages on all signs.  Gwinnett County stresses that its adoption of the 2001 ordinance resulted from years of studying court decisions in Georgia and elsewhere, and not in response to Crown Media's challenges.

and location restrictions in these ordinances.[13]  Crown Media seeks to keep its sign in place through injunctive relief and does not seek damages.[14]

On cross-motions for summary judgment, the district court addressed Crown Media's claims under the 1990 and 1999 ordinances and granted judgment in favor of Gwinnett County.  The district court concluded that Crown Media's constitutional challenge to the 1999 ordinance was moot because the 2001 ordinance removed all of the alleged constitutional violations in the 1999 ordinance.  The district court also concluded that there was no reasonable expectation that the challenged practices will resume.  The district court further determined that Crown Media did not possess any vested property rights in its sign or its permits issued under the 1990 ordinance.[15]  This appeal followed.

---

[13]Although Crown Media's complaint focused on the 1999 ordinance and does not specifically reference the 1990 ordinance, the parties litigated the case in the district court and now on appeal as if the constitutionality of both ordinances were at issue.  Thus, we will decide this case as one in which Crown Media's complaint specifically places in issue the constitutionality of both ordinances.  See Marsh v. Butler County, Ala., 268 F.3d 1014, 1024 n.4 (11th Cir. 2001) (en banc).

[14]Crown Media does seek damages with respect to certain claims that are not the subject of this appeal.  Specifically, Crown Media sought damages for the taking and inverse condemnation of Crown Media's property without just and adequate compensation.  Crown Media also sought a writ of mandamus directing the Gwinnett County Board of Commissioners to issue the special use permit under the 1999 ordinance.

[15]In its lawsuit, Crown Media also contended that Gwinnett County selectively enforced the 1999 ordinance against Crown Media, in violation of the Equal Protection Clauses of the federal and Georgia constitutions.  The district court determined that Crown Media had not shown that it was similarly situated to other property owners whose variance requests were approved, nor had Crown Media identified any evidence of discriminatory intent, and thus

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo.

Café Erotica of Fla., Inc. v. St. Johns County, 360 F.3d 1274, 1281 (11th Cir.

2004). This Court reviews questions of mootness de novo. Christian Coalition of

Ala. v. Cole, 355 F.3d 1288, 1290 (11th Cir. 2004).

## III. DISCUSSION

In this appeal, the only issue is whether Crown Media's constitutional

challenges to the 1990 and 1999 ordinances are moot due to the enactment of the

2001 ordinance. To answer that question, we review (1) some general mootness

principles and (2) Georgia law regarding vested property rights. We then apply

those legal principles to Crown Media's claims.

### A.    Mootness Principles

"The Constitution limits the jurisdiction of the federal courts to actual cases

and controversies. To satisfy the case or controversy requirement of Article III, a

plaintiff must have suffered some actual injury that can be remedied or redressed

by a favorable judicial decision." Nat'l Adver. Co. v. City of Ft. Lauderdale, 934

---

Crown Media had not shown an equal protection violation. We agree and affirm the district court's order to the extent it granted summary judgment on Crown Media's claims that Gwinnett County selectively enforced its sign ordinances in violation of the Equal Protection Clauses of the federal and Georgia constitutions.

F.2d 283, 285-86 (11th Cir. 1991) (internal citation omitted).  A case is moot "'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'"  Granite State Outdoor Adver., Inc. v. City of Clearwater, Fla., 351 F.3d 1112, 1119 (11th Cir. 2003) (quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951 (1969)).  "Put another way, [a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief."  31 Foster Children v. Bush, 329 F.3d 1255, 1263 (11th Cir.) (internal quotation marks and citation omitted), cert. denied, – U.S. – , 124 S. Ct. 483 (2003).

"[M]ootness is a justiciability doctrine that must be satisfied before we may decide a case."  Granite State Outdoor Adver., 351 F.3d at 1119.  "'Because the judiciary is unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in [the] justiciability doctrine, presents an important restriction on the power of the federal courts.'"  Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1327 (11th Cir. 2004) (quoting Socialist Workers Party v. Leahy, 145 F.3d 1240, 1244 (11th Cir. 1998)).

"Generally, a challenge to the constitutionality of a statute is mooted by the repeal of the statute."  Coral Springs, 371 F.3d at 1328-32 (surveying our mootness precedents).  When a party challenges a law as unconstitutional and

14

seeks only declaratory and prospective injunctive relief, a "'superseding statute or regulation moots a case . . . to the extent that it removes challenged features of the prior law.'" Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir. 2000) (quoting Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992)). "'To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case [is] not moot.'" Coalition for the Abolition of Marijuana Prohibition, 219 F.3d at 1310 (quoting Naturist Soc'y, Inc., 958 F.2d at 1520).[16]

In addition, for the repeal of a statute to moot a challenge to that statute, the governmental defendant must show that there is no reasonable likelihood that the repealed statute or challenged practices would be reinstated. Coral Springs, 371 F.3d at 1328; Christian Coalition of Ala., 355 F.3d at 1291; Jews for Jesus, Inc. v. Hillsborourgh County Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998). Further, when a plaintiff requests damages, as opposed to only declaratory or injunctive relief, changes to or repeal of the challenged ordinance may not

---

[16]See Horton v. City of St. Augustine, Fla., 272 F.3d 1318, 1327-28 (11th Cir. 2001) (concluding that amendment to street performance ordinance "did not so fundamentally alter either [the challenged ordinance's] statutory framework or the gravamen of [the plaintiff's] fundamental challenges as to render the original controversy moot").

15

necessarily moot the plaintiff's constitutional challenge to that ordinance. See Granite State Outdoor Adver., 351 F.3d at 1119 (concluding that even though sign ordinance was repealed, constitutional challenge was not moot because plaintiff requested damages).[17]

In this case, Crown Media does not request damages and does not contend that Gwinnett County may reinstate the repealed 1990 and 1999 ordinances. According to Crown Media, what makes this case justiciable is its vested property rights in its sign and permits. Specifically, Crown Media says that its challenges to these old ordinances are not moot because under Georgia law, its property rights in its sign and permits vested prior to the enactment of the 2001 ordinance, and that therefore subsequent changes to the old 1990 and 1999 ordinances do not affect whether it is entitled to its preexisting sign and permits.

In Coral Springs, 371 F.3d 1320 (11th Cir. 2004), this Court recognized that a party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law. Id. at 1333. Further, the parties here do not dispute that a vested

---

[17]See also Naturist Soc'y, Inc., 958 F.2d at 1519 (stating that "claim for damages saves from mootness" constitutional challenges to "old" park regulations governing expressive conduct).

16

property right to a pre-existing permit or sign is a cognizable interest that may keep a constitutional challenge to a subsequently repealed ordinance justiciable. Instead, they dispute whether Crown Media has any such vested property rights.

Whether a plaintiff has obtained vested property rights in a sign or permit is a question of state law. Id. at 1333-34 (surveying Florida law and determining that plaintiff did not have a vested property right to the issuance of a sign permit under Florida law);[18] Nat'l Adver. Co., 934 F.2d at 286 (stating that on remand, district court must "decide whether National has vested rights under Florida law to build billboards on its property"). Thus, to determine whether Crown Media has vested property rights in its sign and permits, we must examine Georgia law and then apply it to Crown Media's claims.

**B.    Georgia Law**

**1.    Issued Permits**

---

[18]To support the principle that state law defines vested property rights, Coral Springs aptly relies on Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S. Ct. 2701 (1972), where the Supreme Court stated:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Coral Springs, 371 F.3d at 1333 (quoting Roth, 408 U.S. at 577, 92 S. Ct. at 2709) (emphasis added).

If a property owner obtains a valid sign or building permit authorizing a particular land use under an existing zoning ordinance, Georgia courts have concluded that property rights vest when a permit is actually issued for a particular land use and that a later, new zoning ordinance prohibiting that land use is not enforceable against the property owner. WMM Props., Inc. v. Cobb County, 339 S.E.2d 252, 254 (Ga. 1986); Schulman v. Fulton County, 295 S.E.2d 102, 103 (Ga. 1982); Clark v. Int'l Horizons, Inc., 252 S.E.2d 488, 490 (Ga. 1979); Keenan v. Acker, 178 S.E.2d 196, 197-98 (Ga. 1970); see Craig v. City of Lilburn, 177 S.E.2d 75, 76 (Ga. 1970).[19] "Once a building permit has issued, a landowner has the right to develop the property pursuant to that permit." WMM Props., 339 S.E.2d at 254. Further, under Georgia law the landowner has such vested rights in an issued permit for a particular land use "notwithstanding a zoning or regulatory change subsequent to the issuance of the building permit, and notwithstanding the fact that there has been no substantial expenditure of funds in reliance upon the

_____

[19]For example, Clark, the Georgia Supreme Court concluded that even though a special use permit was denied, a building permit issued and "a building permit legally obtained and valid in every respect may not be revoked by the zoning authority because the property is subsequently zoned against the type of building sought to be erected," and "[n]o showing of reliance is required." 252 S.E.2d at 490. In Keenan, the Georgia Supreme Court concluded that a property owner who had made inconsequential expenditures had a vested right to land use, stating that "where . . . a permit has been legally obtained and is valid in every respect, it may not be revoked by the zoning authority because the property has subsequently been zoned against the type of building sought to be erected." 178 S.E.2d at 197-98.

18

building permit." Id. In addition, the landowner retains that vested right to develop the property pursuant to an issued permit "during its term or for a reasonable time after its issuance if no term is specified." Id.[20]

## 2. Structure Built in Compliance with Permit

Georgia courts have also determined that the issuance of a permit vests a right in the permit holder only to build in accordance with the requirements in a valid permit or in a valid zoning ordinance. In Jackson v. Delk, 361 S.E.2d 370 (Ga. 1987), the Georgia Supreme Court stated that "the issuance of a building permit, as well as various other forms of administrative approval, vests the right of the permittee to develop his or her property in accordance with existing zoning or regulatory laws." Id. at 372; see WMM Props., 339 S.E.2d at 254 (stating that "[o]nce a building permit has issued, a landowner has a right to develop the property pursuant to that permit"); Gifford-Hill & Co. v. Harrison, 191 S.E.2d 85,

---

[20]The parties agree that Crown Media's permits were validly issued by Gwinnett County. Thus, we need not address the many Georgia decisions involving invalidly issued permits. See, e.g., Union County v. CGP, Inc., 589 S.E.2d 240, 242 (Ga. 2003); Café Risque/We Bare All Exit 10, Inc. v. Camden County, 542 S.E.2d 108, 110 (Ga. 2001); Jackson v. Delk, 361 S.E.2d 370, 372 (Ga. 1987) (stating that "the issuance of a building or other permit [by an official] in violation of existing zoning or regulatory laws is considered an ultra vires act and vests no one's rights"); Corey Outdoor Adver., Inc. v. Bd. of Zoning Adjustments, 327 S.E.2d 178,183-84 (Ga. 1985) (requiring removal of sign constructed within 300 feet of historic property because permit, although issued, was invalid); City of Statham v. Diversified Dev. Co., 550 S.E.2d 410, 412 (Ga. Ct. App. 2001); see also McClure v. Davidson, 373 S.E.2d 617, 622 (Ga. 1988).

19

89 (Ga. 1972) (stating that "an applicant must thereafter comply with all reasonable conditions and requirements imposed upon the use of the land").

In addition, the Georgia Supreme Court has concluded that if a Georgia property owner builds its structure in accordance with its valid permits and the relevant ordinances, the property owner maintains a vested property right in its pre-existing structure, despite the subsequent enactment of an ordinance prohibiting the structure or previously permitted use. See Lamar Adver. of S. Ga., Inc. v. City of Albany, 389 S.E.2d 216, 217 (Ga. 1990) (concluding plaintiff had vested property right to erect sign after obtaining permit to build, despite subsequent change in sign ordinance prohibiting permitted signs); WMM Props., 339 S.E.2d at 254; Craig, 177 S.E.2d at 76.

### 3. Non-Compliant Structure and Valid Ordinance

Georgia case law also addresses what happens when a property owner is issued a permit but does not construct the structure in accordance with that permit. Under Georgia law, a property owner does not obtain vested property rights in a non-compliant structure, and the county may enforce pre-existing requirements in a valid permit or zoning ordinance and require, in some circumstances, that the non-compliant structure be taken down or moved to comply with the permit. See Dep't of Transp. v. Shiflett, 310 S.E.2d 509, 512 (Ga. 1984) (remove totally

20

unauthorized sign); <u>Gray v. DeKalb County</u>, 195 S.E.2d 914, 916 (Ga. 1973) (move partially completed house to proper setback, not destroy it); <u>DeKalb County v. DRS Invs., Inc.</u>, 581 S.E.2d 573, 575-76 (Ga. Ct. App. 2003) **(**remove sign in light of knowing and gross violations of ordinance**)**.

Although broadly speaking a property owner does not acquire vested property rights in its non-compliant structure, the property owner retains vested property rights to build its structure in accordance with the issued permit "during its term or for a reasonable time after its issuance if no term is specified." <u>WMM Props.</u>, 339 S.E.2d at 254; <u>DRS Invs.</u>, 581 S.E.2d at 575;[21] <u>see</u> O.C.G.A. § 36-74-23(b) ("[I]f a violation of any code or ordinance is found, the code inspector shall . . . give him or her a reasonable time to correct the violation."); <u>Tilley Props., Inc. v. Bartow County</u>, 401 S.E.2d 527, 529 (Ga. 1991) ("A 'county has the duty and obligation to work with property owners to allow them the highest and best use of their property . . . .'" (quoting <u>DeKalb County v. Flynn</u>, 256 S.E.2d 362, 364 (Ga. 1979)). Accordingly, under Georgia law, a property owner may attempt to bring

---

[21]In <u>DRS Investments</u>, the Georgia court stated:
"Once a building permit has issued, a landowner has a right to develop the property pursuant to that permit (during its term or for a reasonable time after its issuance if no term is specified), notwithstanding a zoning or regulatory change subsequent to the issuance of the building permit . . . ."
581 S.E.2d at 575 (quoting <u>WMM Props.</u>, 339 S.E.2d at 254).

21

its non-compliant structure into compliance during the permit time or for a reasonable time if no express time limit is in the permit.[22]

This Georgia case law involves permits issued pursuant to <u>valid</u> ordinances. The difficult question is what happens when a property owner does not construct its structure in accordance with setback and height restrictions in an issued sign permit but the ordinance requiring those restrictions is unconstitutional or otherwise invalid. We turn to that question.

### 4. Non-Compliant Structure and Unconstitutional Ordinance

In determining whether a property owner is entitled to a particular land use, Georgia courts at times have assessed the validity or constitutionality of the relevant zoning ordinance restricting the sought-after land use. For example, in <u>Tilley Props., Inc. v. Bartow County</u>, 401 S.E.2d 529 (Ga. 1991), the Georgia Supreme Court declared an agricultural zoning ordinance void and then stated that "[w]here . . . there is no valid restriction on the property," the property owner "has

---

[22]<u>DRS Investments</u> appears to indicate that a sign company that <u>knowingly</u> violates its permit may not always have a reasonable time to bring its sign into compliance. <u>See</u> <u>DRS Invs.</u>, 581 S.E.2d at 575. In this case, there is no evidence that Crown Media <u>knowingly</u> violated its permits. Rather, it was not until almost a year after its construction and after Gwinnett County had issued certificates of occupancy and completion that Crown Media became aware that its sign violated its permits, and even then, Crown Media immediately sought to bring its sign into compliance with the 1990 ordinance under which the sign was erected.

the right under the law to use the property as it so desires." 401 S.E.2d at 529.[23]

In Tilley, after declaring the zoning ordinance void, the Georgia Supreme Court granted a writ of mandamus directing the county to issue the property owner a land use certificate, a required first step for a surface mining permit. Id.

Sikes v. Pierce, 94 S.E.2d 427 (Ga. 1956), provides an earlier example of a case in which the Georgia Supreme Court examined the validity of an ordinance to determine whether a property owner was entitled to the issuance of a permit for a particular land use. Id. at 429. In Sikes, the property owner applied for and was denied a building permit to construct a gasoline station on the grounds that the property was zoned only for residential purposes. Id. at 428. The Georgia Supreme Court determined that the charter of the municipality, which authorized the city to adopt zoning ordinances, and the zoning ordinances adopted under that charter violated interested property owners' due process rights and were "null and

---

[23]In Tilley, the property owner applied for a certificate of land use approval, a required first step to obtaining a surface mining permit. Id. at 527. The county denied the application for the land use certificate because the property was not zoned for mining but was zoned for only agricultural purposes. Id. The property owner challenged that agricultural zoning ordinance as invalid. Id. The Georgia Supreme Court concluded that at the time the property owner applied for its land use certificate, the agricultural zoning ordinance restricting its property to agricultural purposes was invalid because of defects in its enactment. Id. at 529. After declaring an agricultural zoning ordinance void, the Georgia Supreme Court concluded that where "there is no valid restriction on the property, . . . the [property owner] has the right under the law to use the property as it so desires." Id. While Tilley teaches that the validity of a zoning ordinance is relevant to whether a property owner is entitled to a requested certificate, it is important to note that Tilley did not address vested property rights in the face of a subsequent, new ordinance.

void." Id. at 429. In concluding that the property owners were entitled to a building permit, the Georgia Supreme Court stated that, "[i]n the absence of valid zoning regulations or restrictive covenants to the contrary, the right to use one's property for a lawful business purpose is a right inherent in the ownership of the property, and is protected by law." Id. at 428 (citations omitted).[24]

Further, under Geogia law even if one particular ordinance may be invalid or unconstitutional, a landowner still would have to comply with all other valid, relevant ordinances and regulations. See Butts County v. Pine Ridge Recycling, Inc., 445 S.E.2d 294, 297 (Ga. Ct. App. 1994) (requiring company to comply with other valid restrictions even though there was no valid county solid waste management plan); Cannon v. Clayton County, 335 S.E.2d 294, 295 (Ga. 1985) (stating that after an applicant applies for authorization to use land for a particular purpose, the applicant "must thereafter comply with all reasonable conditions and requirements imposed upon the use of the land" (quoting Gifford-Hill & Co., 191 S.E.2d at 89)).

---

[24]It is important to emphasize that Crown Media applied for and actually obtained permits. Thus, we need not address whether under Georgia law a property owner who never sought a permit for a particular land use acquires vested property rights in that use in the face of a subsequent ordinance precluding that land use. See, e.g., N. Ga. Mountain Crisis Network, Inc. v. City of Blue Ridge, 546 S.E.2d 850, 853 (Ga. Ct. App. 2001); Whipple v. City of Cordele, 499 S.E.2d 113, 116 (Ga. Ct. App. 1998).

Having discussed applicable Georgia law regarding permits, we now apply it to Crown Media's claims.

## C.   Crown Media's 1998 Permits

As recounted earlier, Crown Media was issued sign and building permits by Gwinnett County in 1998.  In this case there is no contention by Gwinnett County that these permits issued to Crown Media are invalid.  Accordingly, we examine this case as one in which the  property owner has been issued valid permits for a permissible land use – erection of a sign – under applicable laws and as one in which the merits issue is over whether Gwinnett County can require Crown Media to take down its sign for non-compliance with certain setback and height restrictions in the 1990 ordinance and in its permits stemming from the 1990 ordinance.

We first conclude that under Georgia law Crown Media had vested property rights in its permits.  If Crown Media's sign had been built in compliance with the restrictions in the 1990 ordinance and its permits, this case would be simple.  Crown Media's property rights in its sign would have vested under Georgia law and any subsequently enacted sign ordinance (such as the 1999 ordinance containing different setback restrictions) would be unenforceable against Crown

25

Media's pre-existing, legally constructed sign, and those vested property rights would make Crown Media's challenge to the 1990 ordinance justiciable.

The difficulty for Crown Media is that its sign complied almost, but not fully, with the restrictions in the 1990 ordinance and its permits. Thus, if the 1990 ordinance is constitutional, Crown Media seemingly has no vested property right in its sign under Georgia law to the extent the sign was not in compliance with the 1990 ordinance and its permits. But under Georgia law Crown Media would have, and should have been given by Gwinnett County, the permitted time or a reasonable time to bring its sign into compliance with its permits (in which Crown Media did have vested property rights). This reasonable time-to-comply was especially relevant here where Crown Media had completed its sign and Gwinnett County approved the sign "as-built", issued certificates of occupancy, and did not complain about the sign until ten months after completion.[25]

---

[25]Because the issued 1998 permits are not in the record, we do not know whether they had an express expiration date. If not, under Georgia law, Crown Media had a reasonable time to construct its sign in accordance with its permits. According to Crown Media, Humrich of Gwinnett County initially indicated in 2000 that Crown Media would be given an opportunity to bring its sign into compliance with the 1990 ordinance and its existing permits. Crown Media then gave Gwinnett County a June 12, 2000, letter from its sign builder stating (1) that the sign could be moved to conform with Gwinnett County's requirements, and (2) that such construction could be completed within three months. If the 1990 ordinance is constitutional, the length of the time Crown Media has to conform its sign to its issued permits may be affected by Gwinnett County's approval and then belated discovery of the sign's non-compliance. Because we are remanding this case, the time-to-comply issue is best resolved by the district court in the first instance.

Moreover, if the 1990 ordinance is unconstitutional, Gwinnett County cannot rely, as it does, on the 1990 ordinance to require Crown Media to remove its sign. As of this juncture, Gwinnett County has identified no other restrictions regarding sign size or location in existence at the time Crown Media applied for its permits and erected its sign. See Tilley, 401 S.E.2d at 529; Sikes, 94 S.E.2d at 429. Further, if the 1990 ordinance is unconstitutional and if, as Crown Media claims, the restrictions in Crown Media's sign and building permits stem from and depend on that 1990 ordinance, then under Georgia law the restrictions in Crown Media's permits would be void and unenforceable as well. This observation illustrates that the existence and scope of Crown Media's property rights in its permits and erected sign under state law and the extent to which they vested prior to the enactment of the 2001 ordinance cannot be fully ascertained until the constitutionality of the 1990 ordinance is determined. Therefore, we conclude that Crown Media's challenge to the constitutionality of the 1990 ordinance is not moot.

**D. 1999 Ordinance**

We recognize that if the 1990 ordinance is unconstitutional, this may resolve the parties' dispute over Crown Media's erected sign without any need to determine the constitutionality of the 1999 ordinance. Nonetheless, this appeal is

27

also about Crown Media's constitutional challenge to the 1999 ordinance, and we conclude that issue is also not moot. After construction of Crown Media's sign and after Gwinnett County notified Crown Media to remove its sign, Crown Media applied for a special use permit for its pre-existing sign under the 1999 ordinance. Gwinnett County denied Crown Media a special use permit primarily because its pre-existing sign did not comply with the requirements in the 1999 ordinance, such as the increased 500-foot setback from a residential zoning district, and because allowing Crown Media's sign to remain would set an adverse precedent under the 1999 ordinance.

If the 1999 ordinance was unconstitutional, however, then Gwinnett County's new special use permit requirement and its new setback restrictions would be null and void and not enforceable against Crown Media's pre-existing, permitted sign. More important, the lack of a special use permit and non-compliance with the 1999 ordinance could be no basis for Gwinnett County's ordering Crown Media to remove its pre-existing sign. Thus, the adoption of the 2001 ordinance did not make Crown Media's constitutional challenge to the 1999 ordinance moot.[26]

---

[26]We note that the 2001 ordinance contains a new section that permits a sign to be maintained in nonconformance with the requirements of the 2001 ordinance, provided that "[t]he lawful use of a permanent sign exist[ed] at the time of the adoption of [the 2001 ordinance]."

28

## IV. CONCLUSION

For all the above reasons, we conclude that, given the particular factual circumstances of this case, Crown Media's constitutional challenges to the 1990 and the 1999 ordinances are not moot. In reaching this conclusion, we do not say or imply anything about the merits of this case because our only role at this juncture is to decide the single issue of mootness in this appeal. Accordingly, we reverse and vacate the district court's order dismissing Crown Media's complaint as moot, and remand this case for further proceedings in the district court.

REVERSED and REMANDED with INSTRUCTIONS.

---

Gwinnett County, Ga., Ordinances ch. 86, § 107(a) (2001). The 2001 ordinance also provides that "[a] nonconforming sign structure may not be replaced by another nonconforming sign structure, except where changed conditions beyond the control of the owner warrant the signs repair." Gwinnett County, Ga., Ordinances ch. 86, § 107(c) (2001).