PRYOR, Circuit Judge:
This appeal by Tanner Advertising Group, LLC, of an order that dismissed its challenge of the Fayette County Sign Ordinance of 1998 presents issues of mootness and standing. In 2003, Tanner applied for and was denied a sign permit because Tanner sought to construct signs that did not comply with section 1-43 of *780 the Sign Ordinance. Fayette County, Ga., Sign Ordinance §§ 1-1-1-82 (1998) [hereinafter “1998 Sign Ordinance”]. Tanner moved permanently to enjoin the enforcement of section 1-43 and several other provisions of the 1998 Sign Ordinance as a violation of the freedom of speech protected by the First Amendment, as incorporated by the Fourteenth Amendment. The district court denied injunctive relief on the ground that section 1^13 was constitutional and Tanner lacked standing to challenge the other provisions of the 1998 Sign Ordinance. A panel of this court reversed and concluded that, notwithstanding the constitutionality of section 1-43, Tanner had standing, under the overbreadth doctrine, to challenge the other provisions of the 1998 Sign Ordinance. Tanner Adver. Group LLC v. Fayette County, 411 F.3d 1272 (11th Cir.), vacated, 429 F.3d 1012 (11th Cir.2005). We vacated that decision and granted rehearing en banc to decide whether an injury under one provision of the 1998 Sign Ordinance confers standing to challenge other provisions. After we granted the petition, Fayette County repealed the 1998 Sign Ordinance and enacted a comprehensive new Sign Ordinance. See Fayette County, Ga., Sign Ordinance §§ 1-1-6-1 (2005) [hereinafter “2005 Sign Ordinance”]. Because all but one of the challenges by Tanner were rendered moot by the 2005 Sign Ordinance and Tanner lacks standing to challenge the remaining provision, we now dismiss this appeal.
I. BACKGROUND
To explain the context of this appeal, we address three matters. We first review the operation of relevant provisions of the 1998 Sign Ordinance. We then review the litigation that led to this appeal. We then discuss the repeal of the 1998 Sign Ordinance and the enactment of the 2005 Sign Ordinance.

A. The 1998 Sign Ordinance

The 1998 Sign Ordinance governed the permitting, location, size, and maintenance of all signs in Fayette County. The 1998 Sign Ordinance classified signs as either “on-premise signs” or “off-premise signs.” See 1998 Sign Ordinance §§ 1-1,1-6,1-43. Tanner planned to construct only off-premise signs.
The 1998 Sign Ordinance defined an “off-premise sign” as “[a] sign that advertises a product, service, place, activity, person, institution, business or solicitation which is not carried out on the premises upon which the sign is located.” Id. § 1-1. Permanent off-premise signs had to be “no more than three [ ] feet above ground level” and “no less than and no greater than two [] horizontal feet by two [] vertical feet in width.” Id. § 1^43(B). The 1998 Sign Ordinance also required that a permanent off-premise sign “be brown with white lettering” and contain “information permanently legible and affixed” to the back of the sign. Id. § 1-43(C). A permanent off-premise sign could “communicate either a commercial or noncommercial message.” Id. § 1-43(A). “A permit [was] required” for every off-premise sign. Id.
To obtain a permit for a permanent off-premise sign, a person was required to submit to the Zoning Administrator an application with proposed plans for the structure and location of the sign. Id. § 1-12. The Zoning Administrator reviewed the application to determine whether the sign complied with the 1998 Sign Ordinance, id. § 1-11(B)(1), and issued a permit “if the proposed structure [was] in compliance with the requirements of’ the 1998 Sign Ordinance. The 1998 Sign Ordinance did not provide a time limit within which the Zoning Administrator had to *781 grant or deny a permit. See id. §§ 1-11, 1-12.
The 1998 Sign Ordinahce also prohibited the use of “Attention-getting devices.” Id. § 1-5(A)(10). The 1998 Sign Ordinance stated, “No balloons ..., streamers, lights, pennants, etc. shall be used to attract attention to any sign or business. This includes neon tubing or bare bulb lights encircling a window or outlining the structure.” Id. A sign could be illuminated internally or externally. Id. § 1-3. A sign was illuminated externally when it was “illuminated by an external light source directed primarily toward such sign. Such source cannot be a device that changes color, flashes, or alternates.” Id.
Failure to comply with the 1998 Sign Ordinance was “a misdemeanor and the violator [would] be subject to a fíne of up to $1,000.00 or imprisonment for up to twelve (12) months.” Id. § 1^4(E). Each sign that violated the 1998 Sign Ordinance was “considered a separate violation when applying the penalties].” Id. § 1-4(C). The 1998 Sign Ordinance also provided that “[s]hould any article, clause or provision of this ordinance be declared by a court of competent jurisdiction to be invalid such action shall not affect the validity of the ordinance as a whole.” Id. § 1-82.

B. The History of This Litigation

Tanner is a Georgia limited liability company that buys and leases land to construct commercial and noncommercial signs. Tanner entered eight lease agreements with owners of real property to construct signs in commercial and industrial zones in Fayette County. On February 3, 2003, Tanner submitted eight applications for permits to construct signs that were 50 feet in height and 672 square feet in size. Tanner proposed to construct “Free-Standing,” “Permanent Off-Premise” signs with “two 14’ x 48’ faces ... mounted in a V-Type configuration” that displayed “various noncommercial and commercial messages.” Tanner marked the space on the applications for “External Illumination,” but did not mark the space for “Internal Illumination.” The eight applications were denied the same day that they were submitted on the ground that they failed to comply with section 1-43 of the 1998 Sign Ordinance.
On February 19, 2003, Tanner filed a complaint to enjoin the enforcement of the 1998 Sign Ordinance and recover damages. Tanner alleged that the 1998 Sign Ordinance violated the First Amendment of the United States Constitution as incorporated to the States through the Fourteenth Amendment because it “fails ... to circumscribe the time in which government officials must grant or deny a permit,” grants county officials “virtually limitless discretion in deciding whether a sign permit will be granted or denied,” and is a content-based prior restraint of speech that is not narrowly tailored to serve a compelling governmental objective. Tanner attached a certified copy of the 1998 Sign Ordinance to the complaint.
On May 9, Tanner moved for a permanent injunction and argued that it would suffer irreparable 'harm from the 1998 Sign Ordinance because “[t]he County’s enforcement of ... its unconstitutional regulations has not only postponed, but has effectively foreclosed Tanner’s ability to speak” in five ways. First, Tanner argued that the 1998 Sign Ordinance “prevented] the posting of most signs without prior approval of County officials,” but “granted] County officials unlimited time in which to approve or deny a permit.” See id. §§ 1-11, 1-12. Second, Tanner contended that several provisions of the 1998 Sign Ordinance granted unbridled discretion to county officials “to either allow or prohibit signs based upon how the *782 officials choose to define the sign.” See id. §§ 1-3, 1-5(10), l-5(ll)(a)(2). Third, Tanner argued that the 1998 Sign Ordinance unconstitutionally restricted commercial speech because “[sjection 1-44 of the regulations allows the County to be blanketed with a multitude of barely readable off-premise temporary signs that are exempt from permit requirements,” but the city “provide[d] no findings or evidence whatsoever” that the provision furthers traffic safety and aesthetics. See id. §§ 1-43, 1-44. Fourth, Tanner argued that the 1998 Sign Ordinance completely banned “window signs, banners and flags ... in residential districts.” See id. §§ 1-51-1-55. Fifth, Tanner complained that the 1998 Sign Ordinance distinguished between commercial and noncommercial speech, but was not narrowly tailored to serve a compelling government interest. See id. §§ 1-70.
In support of its motion, Tanner filed a declaration from its member and representative, Michael Chordegian. Chordegian stated that “Tanner intends to utilize its proposed signs in Fayette County, Georgia!],] to communicate commercial as well as political, ideological, religious and other noncommercial messages.” Chordegian also stated that “[d]ue to the County’s enforcement of the 1998 Sign Ordinance, Tanner has been deprived of its ability to post commercial and noncommercial messages on the requested signs. Such deprivation has cost Tanner substantial economic losses.” Chordegian surmised that “[t]he County’s enforcement of its unconstitutional Sign Ordinance has cost Tanner at least $3,000 per sign location, per month since the date the applications were submitted.” Other than the declaration of Chordegian and the eight sign applications that were denied, Tanner did not submit any other evidence in support of the motion.
Fayette County filed two amendments to the 1998 Sign Ordinance as exhibits in its response against permanent injunction. The first amendment imposed a 30-day limit on the Zoning Administrator to grant or deny a permit. The second amendment provided that “[a]ppeals from the decision of the Zoning Administrator ... shall be made to the Zoning Board of Appeals.” It also provided that violations of the 1998 Sign Ordinance would result in fines of “no more than $1,000.00 or imprison[ment] for not more than sixty (60) days .... Each day a violation continues shall be deemed as a separate offense.”
On February 13, 2004, the district court held a hearing regarding Tanner’s motion for a permanent injunction. When the district court asked Tanner whether the evidentiary record was complete, Tanner responded, “We think the record is abundantly clear. We are comfortable with the record.” The district court then asked Tanner whether it had standing to challenge the entire 1998 Sign Ordinance under Granite State Outdoor Advertising v. City of Clearwater, 351 F.3d 1112 (11th Cir.2003). Tanner stated that Clearwater “re-affirms and reinforces ... overbreadth standing in this case.”
Tanner argued that it suffered harm because it “is currently being denied the right to speak.” Tanner reasoned that it had “direct standing ... because [it] was denied a permit.” Tanner contended that the denial of the permit established standing because it “was forced to go through an application process” that did not provide time limits for decisions and appeals. Tanner asserted that it had standing to challenge section 1-43 because it was denied sign permits under that provision. Tanner also contended that a provision of the 1998 Sign Ordinance that prohibited obscene material “could be applied to [Tanner] as soon as [it] put up this sign or *783 any other sign in the county” because the provision “allowed the county officials to take down any sign that they don’t approve of.” See 1998 Sign Ordinance § 1-5(A)(11).
The district court denied the permanent injunction. The district court found that Clearwater “does not stand for the proposition that a plaintiff who establishes an injury in fact under one provision of an ordinance may challenge the entire ordinance under the overbreadth doctrine.” The district court reasoned that because “the only harm [Tanner] suffered was under § 1-43, [Tanner] has standing to challenge only § 1-43 as applied to [Tanner] and under the overbreadth doctrine under § 1-43 as applied to non-commercial speech.”
The district court then concluded that section 1-43, as applied to the permit applications of Tanner, was content-neutral and a valid time, place, and manner restriction. The district court also concluded that section 1-43 was not overbroad facially because it “does not substantially infringe the rights of others not party to this case.” The district court dismissed the complaint filed by Tanner, including the request for damages.
Tanner appealed and argued that the district court erroneously applied a “narrow interpretation of overbreadth” in Clearwater. Although Tanner contended that Clearwater restricted standing only for plaintiffs who challenged content-neutral speech restrictions, Tanner argued that Clearwater was in conflict with the precedents of the Supreme Court and this Court. Tanner argued that the 1998 Sign Ordinance was content-based because it regulated “obscene or indecent material,” see id. § 1-5, and favored commercial speech over noncommercial speech, see id. §§ 1-43, 1-44, 1-70(A). Tanner argued that “the District Court erred by failing to address the inherent conflicts within the Sign Ordinance that directly impact the constitutionality of the regulations generally, and Section 1-43 specifically.” See id. §§ 1-70(A), 1 — 61(A)(1), (10).
A panel of this Court reversed and held that Tanner had standing to challenge facially all provisions of the 1998 Sign Ordinance. Tanner Adver. Group, LLC, 411 F.3d at 1277. The panel concluded that the overbreadth doctrine allowed plaintiffs to bring claims on behalf of third parties because “individual private citizens who are denied the opportunity to express themselves under an unconstitutional ordinance often find the barriers to legal redress to be too high.” Id. at 1275. The panel also distinguished our decision in Clearwater on the ground that Clearwater “overlooked our past Eleventh Circuit precedent.” Tanner Adver. Group, LLC, 411 F.3d at 1277. The panel explained, “Prior to Clearwater, if a ... plaintiff met the Article III minimal requirements for standing under one provision of the ordinance, it was accepted that courts would grant standing for the plaintiff to also make a broad facial challenge to the constitutionality of the Ordinance as a whole.” Id. at 1276 (citing Metromedia, Inc. v. San Diego, 453 U.S. 490, 504 n. 11, 101 S.Ct. 2882, 2890 n. 11, 69 L.Ed.2d 800 (1981) (plurality opinion); Granite State Outdoor Adver. v. City of St. Petersburg, 348 F.3d 1278 (11th Cir.2003); Dimmitt v. City of Clearwater, 985 F.2d 1565 (11th Cir.1993); National Adver. Co. v. City of Ft. Lauderdale, 934 F.2d 283 (11th Cir.1991); Solomon v. City of Gainesville, 763 F.2d 1212 (11th Cir.1985)). The panel concluded that it was “compelled to follow our ‘prior precedent’ or ‘earliest case’ rule, uphold our decisions preceding Clearwater, and disregard the narrow approach to the over-breadth doctrine employed by the Clear-water court.” Tanner Adver. Group, LLC, *784 411 F.3d at 1277. The panel reversed the denial of a permanent injunction and remanded for further proceedings. Id. at 1278.
After the panel entered its decision, two other courts entered decisions about the 1998 Sign Ordinance. First, on January 10, 2005, the federal district court for the Northern District of Georgia enjoined the enforcement of section 1-55 of the 1998 Sign Ordinance “as it related to political or campaign signs.” Maxwell v. Fayette County, No. 3:05-CV-081-JTC (N.D.Ga. Jan. 10, 2005). Second, a Georgia court concluded that several provisions of the 1998 Sign Ordinance violated the United States and Georgia Constitutions. Coffey v. Fayette County, No. 2004V-0754(E) (Sup.Ct. Fayette Co., Ga. July 20, 2005). The court struck the phrase, “such sign may not be used to direct the public to a place or event at a location other than the location upon which the sign is posted,” as unconstitutional when applied to noncommercial speech. Id. The court also struck several exemptions, see 1998 Sign Ordinance §§ 1-64, 1-69, 1-3, 1-67, 1-65, 1-55, but upheld all other provisions. Id.
On November 1, 2005, we granted the petition for rehearing en banc filed by Fayette County and vacated the panel opinion. Tanner Adver. Group, LLC v. Fayette County, 429 F.3d 1012 (11th Cir.2005).

C. The 2005 Sign Ordinance

On November 2, 2005, Fayette County repealed the 1998 Sign Ordinance and enacted a comprehensive new sign ordinance. The 2005 Sign Ordinance requires the Zoning Administrator to grant or deny a permit within thirty days. 2005 Sign Ordinance § 2-2. The 2005 Sign Ordinance does not distinguish between on-premise and off-premise signs or commercial and noncommercial speech. The new ordinance contains a specific definition of “obscene” material. Id. § 2-5(A)(8). There is no exemption for “special event” signs. It also does not prohibit window signs and flags in residential districts. Id. § 2-4. The only provision challenged by Tanner in the 1998 Sign Ordinance that remains substantially similar in the 2005 Sign Ordinance is the prohibition of “Attention-getting devices,” which are defined as “bal-loonsf ] ... neon tubing or bare bulb lights encircling a window or outlining a structure.” Id. § 2-5(A)(7).
II. STANDARD OF REVIEW
We review the question of mootness de novo. Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir.2004) (quoting Christian Coal. of Ala. v. Cole, 355 F.3d 1288, 1290 (11th Cir.2004)). We review standing determinations de novo. Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir.), cert. denied, — U.S. -, 126 S.Ct. 377, 163 L.Ed.2d 164 (2005).
III. DISCUSSION
Tanner argues that several provisions of the 1998 Sign Ordinance violate the freedom of speech guaranteed by the First Amendment. Tanner does not appeal the ruling of the district court that section 1-43 of the 1998 Sign Ordinance was constitutional as applied to its permit applications, but Tanner argues that the harm it suffered in the denial of its applications for sign permits allows it to challenge other provisions of the 1998 Sign Ordinance. Tanner contends that it has standing to challenge (1) the procedural requirements of the 1998 Sign Ordinance, 1998 Sign Ordinance §§ 1-11, 1-12(B); (2) the provisions that favor “on-premise” noncommercial speech over “off-premise” noncommercial speech, id. §§ 1-43, 1-44, 1-55, 1-62, 1-70(A); (3) the provisions that allegedly *785 grant unbridled discretion to County officials to define “special events,” id. § 1-3, “Attention-getting devices,” id. § 1-5(10), and “obscene” material, id. § l-5(ll)(a)(2); and (4) the prohibition on window signs in residential districts, see id. §§ 1-51-1-55. Tanner also argues that the enactment of the 2005 Sign Ordinance does not render this appeal moot.
Tanner’s arguments fail. With the exception of the challenge to the prohibition of “Attention-getting devices,” the repeal of the 1998 Sign Ordinance and the enactment of the 2005 Sign Ordinance rendered moot the challenges brought by Tanner. 1998 Sign Ordinance § 1-5(10); 2005 Sign Ordinance § 2-5(A)(7). Tanner also lacks standing to challenge the prohibition of “Attention-getting devices.” We exercise our discretion to review the issue of mootness first, followed by the issue of standing. See Arizonans for Official English v. Arizona, 520 U.S. 43, 66-67, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997).

A. The 2005 Sign Ordinance Renders Moot Most of the Challenges by Tanner to the 1998 Sign Ordinance.

“Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case” was filed. Burke v. Barnes, 479 U.S. 361, 363, 107 S.Ct. 734, 736, 93 L.Ed.2d 732 (1987). The doctrine of mootness provides that “[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).” U.S. Parole Comm’n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (quoting Henry Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). Ordinarily, “a challenge to the constitutionality of a statute is mooted by repeal of the statute.” Coral Springs St. Sys., Inc., 371 F.3d at 1329.
Our discussion of whether this appeal is moot is divided in three parts. We first address the argument by Tanner that its request for damages in the complaint means that this appeal is not moot. We then consider Tanner’s argument that it acquired, under Georgia law, vested property rights that remain enforceable. Because both arguments by Tanner fail, we then address which challenges were rendered moot by the adoption of the 2005 Sign Ordinance.
1. Tanner Waived Any Argument That Would Have Entitled Tanner to Damages.
Tanner argues that its appeal has not been rendered moot by the adoption of the 2005 Ordinance because its complaint included a request for damages. “[W]hen a plaintiff requests damages, as opposed to only declaratory or injunctive relief, changes to or repeal of the challenged ordinance may not necessarily moot the plaintiffs constitutional challenge to that ordinance.” Crown Media LLC v. Gwinnett County, 380 F.3d 1317, 1325 (11th Cir.2004). The problem for Tanner is that it failed to preserve any argument about a claim that would have entitled Tanner to damages.
Under the established law of this Circuit, “issues that clearly are not designated in the initial brief ordinarily are considered abandoned.” Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir.1995). “[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.” Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir.2004). Although “briefs should be *786 read liberally to ascertain-the issues raised on appeal,” Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir.1994), there was no mention in either the initial brief before the panel or the initial en banc brief submitted by Tanner of a claim that could give rise to the remedy of damages. Tanner did not argue that the district court erred when it concluded that section 1-43, which had been applied to deny its application for sign permits, was constitutional.
Tanner, in its complaint, requested damages based on the “substantial revenue on a monthly basis from the signs for which it has requested permits.” The district court concluded that Tanner was not entitled to damages because section 1-43, as applied to deny Tanner a permit, was constitutional. In the initial brief before the panel, Tanner did not raise the argument that the decision of the district court regarding section 1-43 was erroneous, and Tanner did not argue that the denial of its applications for sign permits was unconstitutional.
Tanner appealed the dismissal of its facial challenges of other provisions of the 1998 Sign Ordinance, and Tanner requested that we “permanently enjoin the County’s enforcement of its unconstitutional Sign Ordinance.” The initial en banc brief submitted by Tanner likewise was devoid of any argument about either the decision of the district court regarding section 1^43 or the denial of the eight applications of Tanner for sign permits. Because the damages that Tanner requested in its complaint were premised on the alleged unconstitutional denial of its applications for sign permits, and Tanner did not raise that issue on appeal, the record shows no remaining claims that could potentially entitle Tanner to damages.
Tanner did not and could not request damages for the facial challenges it raised in this appeal. Tanner argues on appeal that the enforcement of several provisions of the 1998 Sign Ordinance will deprive Tanner of the ability to construct other signs in the future. Apart from the denial of its sign permits under section 1-43, Tanner did not complain in the district court that the enforcement of the 1998 Sign Ordinance has caused it any harm. Tanner is not entitled to damages for the facial challenges of provisions of the 1998 Sign Ordinance because those provisions have not’yet harmed Tanner. “[Wjhatever the constitutional basis for § 1983 liability, such damages must always be designed ‘to compensate injuries caused by the [constitutional] deprivation.’ ” Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 309, 106 S.Ct. 2537, 2544, 91 L.Ed.2d 249 (1986) (alterations in original) (citing Carey v. Piphus, 435 U.S. 247, 265, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978)).
A request for damages that is barred as a matter of law cannot save a case from mootness. Arizonans for Official English, 520 U.S. at 69, 117 S.Ct. at 1069-70. In Arizonans for Official English, the Supreme Court reversed a decision of the Ninth Circuit, which had held that a request for damages against the State of Arizona meant that the appeal was not moot. Id. The Supreme Court concluded that, because the request for damages was barred by the Eleventh Amendment, the appeal was moot. The same result holds true here because the only issues presented by Tanner on appeal pertain to its facial challenges regarding prospective harm, which cannot give rise to the remedy of damages. See Memphis Cmty. Sch. Dist., 477 U.S. at 310, 106 S.Ct. at 2544 (“Section 1983 presupposes that damages that compensate for actual harm ordinarily suffice to deter constitutional violations.”).
Tanner erroneously contends that “the fact [it] did not present a damages argument to this Court in its initial brief or En *787 Banc Brief does not mean that [it] has waived those claims.” Tanner argues that because it did not brief the issue of damages before the district court, it is excused from raising the request for damages before this Court. This argument fails.
The argument of Tanner is based on a misunderstanding of our scope of review. As a court of review, “an appellate court will not consider a legal issue or theory raised for the first time on appeal,” United States v. S. Fabricating Co., 764 F.2d 780, 781 (11th Cir.1985), but that truism did not preclude Tanner from arguing that the decision of the district court about section 1^8 as applied to Tanner was erroneous. “Under our caselaw, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue — even if properly preserved at trial — will be considered abandoned.” Access Now, Inc., 385 F.3d at 1330 (quoting United States v. Jernigan, 341 F.3d 1273, 1283 n. 8 (11th Cir.2003)). Tanner preserved the issue of damages in the district court by complaining about the denial of its applications for sign permits and requesting damages as a remedy. When the district court denied the motion of Tanner for a permanent injunction and dismissed sua sponte the complaint of Tanner, including its request for damages, Tanner was obliged to raise on appeal any error in that dismissal regardless of whether the parties had had an opportunity to brief the alleged error in the district court.
In its briefs to the panel and en banc, Tanner raised arguments that pertained only to its facial challenges, which correspond to its requests for injunctive relief. Tanner abandoned any argument about the dismissal of its complaint that it suffered damages based on the denial of its applications for permits under section 1-43. That abandonment means that the argument of Tanner regarding the interplay of mootness and its request for damages fails.
2. Tanner Has No Vested Property Rights in Denied Permit Applications.
Tanner next argues that its appeal is not moot because it has a vested right to issuance of a sign permit because the 1998 Sign Ordinance was unconstitutional. A county “may not withhold an application on the basis of a void ordinance, and under certain circumstances, this can give rise to a vested right in the permit.” Coral Springs St. Sys., Inc., 371 F.3d at 1334. Because it did not argue on appeal that section 1-43 was void as applied to its permit applications, Tanner also did not preserve any possible argument that it had a vested right to the issuance of a permit.
“[A] party’s vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law.” Crown Media LLC, 380 F.3d at 1325 (citing Coral Springs St. Sys., Inc., 371 F.3d at 1333). “[Vjested rights are not created easily. A ‘vested right’ has been defined as ‘[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person’s consent.’ ” Coral Springs St. Sys., Inc., 371 F.3d at 1333 (citing Black’s Law Dictionary (7th ed.1999)). “Whether a plaintiff has obtained vested property rights in a sign or permit is a question of state law.” Crown Media LLC, 380 F.3d at 1325.
Under Georgia law, “vested rights to development arise when any of four conditions is shown to exist: (a) Right to Rely upon Building and other Permits Once Is *788 sued ... (b) Right to Issuance of a Building Permit ... (c) Right to Rely upon Approved Development Plan ... (1) Formally approved ... (2) Informally approved ... (d) Right to Rely upon Official Assurances that a Building Permit Will Probably Issue.” Union County v. CGP, Inc., 277 Ga. 349, 351, 589 S.E.2d 240 (2003) (citing WMM Props., Inc. v. Cobb County, 255 Ga. 436, 438-39, 339 S.E.2d 252 (1986)). “It is apparent ... that all the bases enumerated in WMM Properties for the accrual of vested rights involve some species of estoppel.” Union County, 277 Ga. at 351, 589 S.E.2d 240.
The County denied the sign permit applications submitted by Tanner because they did not comply with section 1-43 of the 1998 Sign Ordinance. The district court concluded that section 1^43, as applied to those applications, was a reasonable time, place, and manner restriction. Tanner failed to argue on appeal that section 1-43, as applied to its applications, was unconstitutional. Tanner instead argued that the denial of its applications allowed it to challenge other provisions of the 1998 Sign Ordinance that might affect its applications for permits in the future. Because Tanner did not raise any argument about the constitutionality of section 1-43 as applied to the permits it sought, Tanner cannot now argue that section 1-43 is void or that Tanner has a vested right in the permits that were denied based on section 1-43.
Because Tanner failed to raise the constitutionality of section 1-43 as applied to its permits, Tanner had no vested property rights in sign permit applications that failed to comply with the constitutional proscriptions in the 1998 Sign Ordinance. The Supreme Court of Georgia has explained, “A permit for a use prohibited by a valid zoning ordinance, regulation, or restriction is void, of no effect, and subject to revocation.” Corey Outdoor Adver., Inc. v. Bd. of Zoning Adjustments, 254 Ga. 221, 226, 327 S.E.2d 178 (1985) (citation omitted). In Corey, an outdoor advertising company was erroneously issued a permit to construct a sign that violated provisions of the city zoning ordinance. The Georgia Supreme Court stated that the zoning ordinance was valid and “a permit issued for either an illegal use or an illegal nonconforming use is void; ... it does not vest constitutional rights.” Id. at 227, 327 S.E.2d 178. “[T]he law in Georgia, like the rule in nearly all jurisdictions, supports the conclusion that a permit for an illegal use is void and vests no property rights.” Id. Tanner has no vested property rights in sign applications that failed to comply with the valid restrictions in the 1998 Sign Ordinance.
Contrary to the argument of Tanner, our decision in Crown Media is inapposite to this appeal. We concluded in Crown Media that a sign company had a vested property right in sign permits issued by the County under a sign ordinance that was amended after the issuance of the permits. Crown Media, 380 F.3d at 1329. A key fact that supported our conclusion in that decision was “that Crown Media applied for and actually obtained permits.” Id. at 1328 (emphasis added). We stated that because “Crown Media’s property rights in its sign would have vested under Georgia law[,] any subsequently enacted sign ordinance ... would be unenforceable against Crown Media’s pre-existing, legally constructed sign.” Id. at 1329. The signs constructed in Crown Media were a conforming use under the sign ordinance. We did not consider whether an applicant has a vested property right in sign permits that were denied under a challenged ordinance.
The reliance by Tanner on Tilley Properties, Inc. v. Bartow County is also una *789 vailing. 261 Ga. 153, 401 S.E.2d 527 (1991). The Georgia Supreme Court in Tilley addressed whether owners of land that was zoned agricultural were entitled to a certificate of zoning compliance to engage in mining activities. 261 Ga. at 153, 401 S.E.2d 527. The owners argued that “the [agricultural] zoning ordinance is null and void because it was not enacted in compliance with the Zoning Procedures Law (ZPL), O.C.G.A. § 36-66-1 et seq.” Id. “The Georgia Supreme Court concluded that at the time the property owner applied for its land use certificate, the agricultural zoning ordinance restricting its property to agricultural purposes was invalid because of defects in its enactment.” Crown Media LLC, 380 F.3d at 1328 n. 23 (citing Tilley Props., Inc., 401 S.E.2d at 529). “While Tilley teaches that the validity of a zoning ordinance is relevant to whether a property owner is entitled to a requested certificate, it is important to note that Tilley did not address vested property rights in the face of a subsequent, new ordinance.” Id.
Tanner also erroneously relies on Recycle & Recover, Inc. v. Georgia Board of Natural Resources, 266 Ga. 253, 466 S.E.2d 197 (1996), and WMM Properties, Inc., 255 Ga. 436, 339 S.E.2d 252, for the proposition that “[a] landowner has a right, enforceable by mandamus, to be issued a building permit in accordance with zoning regulations as such regulations exist at the time a proper application for building permit is submitted to the proper authority.” WMM Props., Inc., 339 S.E.2d at 254-55. These decisions are in-apposite because they involved challenges to ordinances that were enacted after the plaintiffs had received permits. See Recycle & Recover, Inc., 466 S.E.2d at 197 (“The Georgia Board of Natural Resources [ ] issued a permit to Recycle & Recover, Ine.[,] for the construction and operation of a solid waste treatment facility.”); WMM Props., Inc., 339 S.E.2d at 253 (“[B]efore any purchase, [WMM] obtained a certification of zoning from the Cobb County Planning Commission.”). Tanner never received a sign permit that was superseded by the enactment of an ordinance.
Tanner has no vested property right to construct its signs. Tanner failed to argue on appeal that section 1-43, upon which Tanner was denied a permit, is unconstitutional as applied to its permit applications, and Tanner was never granted a permit. We next consider which challenges were rendered moot by the enactment of the 2005 Sign Ordinance.
3. The Amendment Renders Moot All but One of the Challenges by Tanner.
Tanner complains about four aspects of the 1998 Sign Ordinance. Tanner appealed the denial of a permanent injunction because provisions of the 1998 Sign Ordinance (1) lacked procedural safeguards, see 1998 Sign Ordinance §§ 1-11, 1-12(B); (2) favored “on-premise” noncommercial speech over “off-premise” noncommercial speech, id. §§ 1-43, 1-44, 1-55, 1-62, 1-70(A); (3) allegedly granted unbridled discretion to County officials to define “special events,” “Attention-getting devices,” and “obscene” material, id. §§ 1-3, 1-5(10), 1-5(1 l)(a)(2); and (4) prohibited window signs in residential districts, see id. §§ 1-51-1-55. With the exception of the prohibition of “Attention-getting devices,” the 2005 Sign Ordinance renders these challenges moot.
“This Court and the Supreme Court have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation.” Nat’l Adver. Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir.2005), cert. de *790 nied, — U.S. —, 126 S.Ct. 1318, 164 L.Ed.2d 48 (2006). A “superseding statute or regulation moots a case ... to the extent that it removes challenged features of the prior law.” Coal. for the Abolition on Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir.2000). If the repeal is such that “the allegedly unconstitutional portions of the [challenged] ordinance no longer exist,” the appeal is rendered moot because “any decision we would render would clearly constitute an impermissible advisory opinion.” Nat'l Adver. Co., 402 F.3d at 1335.
The 2005 Sign Ordinance “remove[d] challenged features of the” 1998 Sign Ordinance. Coal. for the Abolition on Marijuana Prohibition, 219 F.3d at 1310. Tanner’s complaint that the 1998 Sign Ordinance lacks time limits for decisions and appeals is no longer “live,” Burke, 479 U.S. at 363, 107 S.Ct. at 736, because the 2005 Sign Ordinance requires the Zoning Administrator to grant or deny a permit within thirty days and provides that applicants may appeal to the Zoning Board of Appeals, 2005 Sign Ordinance § 2-l(B). Tanner’s complaint that the 1998 Sign Ordinance unconstitutionally favored “on-premise” noncommercial speech over “off-premise” noncommercial speech, see 1998 Sign Ordinance §§ 1-43, 1-44, 1-55, 1-70(A), is moot because the 2005 Sign Ordinance eliminated all distinctions between “off-premise” and “on-premise” speech. Tanner’s complaint that the definitions of “obscene material” and “special events” granted unbridled discretion to the Zoning Administrator to exempt “special events” and define “obscene” material is also moot. See 1998 Sign Ordinance §§ 1-3, l-5(ll)(a)(2). The 2005 Sign Ordinance does not exempt “special events” and it provides a lengthy definition of the term “obscene.” See 1998 Sign Ordinance § 1-5(ll)(a)(2); see generally 2005 Sign Ordinance § 2-5(A)(8). Tanner’s complaint that the restrictions in residential areas under the 1998 Sign Ordinance “are so sweeping that even the most basic forms of signs ... are prohibited or severely limited” because they prohibit window signs, flags, and banners, 1998 Sign Ordinance § 1-51-1-55, is no longer live, because the 2005 Sign Ordinance allows window signs, flags, door signs, and temporary signs, 2005 Sign Ordinance § 2-4.
All that is left is Tanner’s challenge to the prohibition on “Attention-getting devices.” Tanner challenged the prohibition on “Attention-getting devices,” which the 1998 Sign Ordinance described as “balloons [ ], streamers, lights, pennants, ... neon tubing, [and] bare bulb lights encircling a window” on the ground that the prohibition grants unbridled discretion to county officials to define an “Attention-getting device.” 1998 Sign Ordinance § 1-5(10). The 2005 Sign Ordinance continues to prohibit “Attention-getting devices, including but not limited to balloons, ... all inflatable air signs and lights ..., [and] neon tubing or bare bulb lights encircling a window or outlining the structure.” 2005 Sign Ordinance § 2-5(A)(7). Although the continuation of this prohibition means that this lone aspect of the complaint of Tanner is not moot, a serious question remains about whether the challenge by Tanner presents an actual case or controversy. We next consider whether Tanner has standing to challenge the prohibition against “Attention-Getting Devices.” See 1998 Sign Ordinance § 1-5(10); 2005 Sign Ordinance § 2-5(A)(7).
B. Tanner Lacks Standing to Challenge the Prohibition Against “Attention-Getting Devices. ”
The Constitution of the United States limits the subject matter jurisdiction of federal courts to “Cases” and “Con *791 troversies.” U.S. Const., Art. Ill § 2. “[T]he core component of standing is an essential and unchanging part of the case- or-controversy requirement of Article III.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). A plaintiff who invokes the jurisdiction of a federal court bears the burden to show “(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.” Clearwater, 351 F.3d at 1116. Each element is “an indispensable part of the plaintiffs case” and “must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, ie., with the manner and degree of evidence required at the successive stages of the litigation.” Lujan, 504 U.S. at 561, 112 S.Ct. at 2136.
The evidentiary record does not establish that Tanner was affected by the provision that allegedly grants unbridled discretion to prohibit “Attention-getting devices” because the permit applications submitted by Tanner do not establish that this provision pertains to Tanner. See Meese v. Keene, 481 U.S. 465, 473-74, 107 S.Ct. 1862, 1867-68, 95 L.Ed.2d 415 (1987) (finding a statute threatened a cognizable injury where the plaintiff “submitted detailed affidavits” and “views of an experienced political analyst” that were “uncontradicted” to establish reputational harm from enforcement). Tanner proposed to construct signs that “will contain two 14’ x 48’ faces that will be mounted in a V-Type configuration.” This description does not suggest that the signs proposed by Tanner would use “Attention-getting devices.” See id. Although Tanner marked that its signs would be externally illuminated, external illumination “cannot be a device that changes color, flashes, or alternates.” 2005 Sign Ordinance § 1-5(10). The record is devoid of any evidence that Tanner ever intended to use “Attention-getting devices” in Fayette County.
The permit applications do not establish that Tanner had “an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute.” Pittman v. Cole, 267 F.3d 1269, 1283 (11th Cir.2001) (quoting Wilson v. State Bar of Ga., 132 F.3d 1422, 1428 (11th Cir.1998)). “Standing cannot be ‘inferred argumentatively from averments in the pleadings,’ but rather ‘must affirmatively appear in the record.’ ” FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 608, 107 L.Ed.2d 603 (1990) (citations omitted), overruled in part on other grounds by City of Littleton v. Z.J. Gifts D-4, LLC, 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004). The record fails to establish that Tanner “has sustained or is immediately in danger of sustaining a direct injury” from the prohibition on “Attention-getting devices.” Laird v. Tatum, 408 U.S. 1, 13, 92 S.Ct. 2318, 2325, 33 L.Ed.2d 154 (1972). Tanner lacks standing to challenge this provision.
Because Tanner lacks standing to challenge this provision of the 1998 Sign Ordinance, we need not address the over-breadth argument of Tanner that standing under one provision confers standing to challenge all provisions of the Ordinance. The 2005 Sign Ordinance rendered moot all challenges but one, and Tanner lacks standing to challenge that lone provision. No challenges to the 1998 Sign Ordinance remain for Tanner to premise its over-breadth challenge. We leave that issue for another day.
IV. CONCLUSION
The appeal by Tanner of the denial of motion for a permanent injunction is
DISMISSED.