[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13699

Non-Argument Calendar

_____

MICHAEL EARL VAN CLEVE,
an individual,

                                                                Plaintiff-Appellant,

*versus*

U.S. SECRETARY OF COMMERCE,
DIRECTOR OF THE U.S. CENSUS BUREAU,
DIRECTOR OF THE OFFICE OF MANAGEMENT AND
BUDGET,
U.S. DEPARTMENT OF COMMERCE,
U.S. CENSUS BUREAU, et al.,

2                       Opinion of the Court                    21-13699

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23611-RNS

_____

Before Luck, Lagoa, and Black, Circuit Judges.

PER CURIAM:

Michael Van Cleve, an attorney proceeding *pro se*, filed an action against the U.S. Secretary of Commerce, Director of the U.S. Census Bureau, Director of the Office of Management and Budget (OMB), U.S. Department of Commerce, U.S. Census Bureau, and OMB (collectively, the agencies), alleging they violated, and will continue to violate, the Administrative Procedure Act by collecting and disseminating inaccurate race data.  Van Cleve asserts the district court erred by concluding he lacks standing and dismissing his third amended complaint.[1]  His three theories of standing are based

---

[1] In addition to the dismissal of the third amended complaint for lack of standing, Van Cleve also challenges the denial of his motion for a three-judge panel, pursuant to the 1998 Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, § 209, Pub. L. No. 105-119, 111 Stat. 2440, 2481–82 (1997) (codified at 13 U.S.C. § 141 note), and the district court's conclusion his third count failed on the merits.  However, because we hold Van Cleve lacks standing, we need not address these issues.

on harm to his interests as an attorney, informational injury, and "census degradation." After review,[2] we affirm the district court.

## I.  DISCUSSION

### A.  Harm to Van Cleve's Interests as an Attorney

A plaintiff who invokes the jurisdiction of a federal court bears the burden to show the Constitutional limitations on standing: (1) an injury in fact, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood the injury will be redressed by a favorable decision. *Tanner Adver. Grp., LLC v. Fayette Cnty.*, 451 F.3d 777, 791 (11th Cir. 2006) (*en banc*). At the pleading stage of a case, general factual allegations of injury can suffice, but these general factual allegations must plausibly and clearly allege an injury in fact. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (*en banc*). "Mere conclusory statements do not suffice." *Id.* (quotation marks and alteration omitted).

"An injury in fact consists of an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quotation marks omitted). "A concrete injury must be *de facto*; that is, it must actually exist." *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th

---

[2] "We review standing determinations *de novo*." *Tanner Adver. Grp., L.L.C. v. Fayette Cnty.*, 451 F.3d 777, 784 (11th Cir. 2006) (*en banc*).

Cir. 2019) (quotation marks omitted).  A particularized injury affects a plaintiff "in a personal and individual way," although "that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.7 (2016); *Trichell*, 964 F.3d at 996.  "Each element of injury—a legally protected interest, concreteness, particularization, and imminence—must be satisfied." *Trichell*, 964 F.3d at 996-97.

Tangible injuries qualify as concrete.  *Trichell*, 964 F.3d at 997.  Intangible injuries sometimes qualify as concrete, but alleging a bare procedural violation, divorced from any concrete harm, is not enough to support standing.  *Id.*; *Muransky*, 979 F.3d at 924.  Generally, courts look to history and the judgment of Congress to determine whether an intangible harm is sufficiently concrete.  *Spokeo*, 578 U.S. at 340.  For example, in *Trichell*, we concluded the plaintiffs' claims were not comparable to their closest historical analog, the common-law tort of negligent misrepresentation, because the plaintiffs did not establish reliance or damages, which cut against standing.  *Trichell*, 964 F.3d at 998.  Nonetheless, "if a statute protects against a lack of information, the denial of access to information is a concrete injury."  *Muransky*, 979 F.3d at 930.

The harms Van Cleve alleged to his interests as an attorney were not particularized or concrete.[3] He alleged inaccurate census data (1) will make it more difficult to understand which communities most need legal assistance; (2) that he will not be able to rely on this data in cases he litigates; and (3) he has lost time and money pursuing this action that he could have devoted to other cases.

As to his first assertion, Van Cleve failed to explain why greater difficulty in identifying underprivileged communities that need legal assistance will harm him personally.[4] *Muransky*. 979 F.3d at 925 (stating we "will not imagine or piece together an injury sufficient to give a plaintiff standing when [he] has demonstrated none, and we are powerless to create jurisdiction by embellishing a deficient allegation of injury" (quotation marks omitted)).

As to his second assertion, Van Cleve likewise failed to explain how not being able to rely on census data harms him specifically. It is unclear from his allegations how census data would be useful in discrimination or civil rights cases. Van Cleve simply

---

[3] To the extent Van Cleve's claimed informational injury or injury based on "census degradation" relied on harm to his interests as an attorney to establish particularization, such reliance is misplaced for the reasons discussed.

[4] Even if Van Cleve were implying he could lose revenue, the third amended complaint noted the "Florida Bar encourages its members to service individuals who are indigent, in need [of] pro bono services, or otherwise encourages its members to assist communities that are subject to discrimination, segregation, or economic deprivation," implying he desires to help such communities pro bono.

states he "litigates cases where race data or race information may be necessary," such as Fair Housing Act cases. But this statement does not explain how the race data collected by the agencies, which would seem to only indicate where individuals of different races live, would show any discriminatory act has occurred. Moreover, if the census did not include "Middle Eastern and North African" or "Hispanic" as races in the past, and not including such races as options results in inaccurate or unreliable data, the implication is that civil rights practitioners like Van Cleve use some other data or evidence to show civil rights violations or instances of discrimination. It follows that his practice has not been, and will not be, harmed by a lack of reliable census race data. To the extent this theory relied on injury to the interests of Van Cleve's potential clients, whose cases cannot benefit from more accurate race data, this assertion of third-party standing is foreclosed. *Kowalski v. Tesmer*, 543 U.S. 125, 129, 134 (2004) (stating a party generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties, such that lawyers cannot assert "the claims of future unascertained clients").

As to the third assertion, Van Cleve failed to allege he was required to inflict this form of harm on himself because the harm to his interests as an attorney was "certainly impending." *See Muransky*, 979 F.3d at 931 (explaining plaintiffs cannot manufacture a concrete harm by inflicting harm on themselves). His allegations stated that, in general, he cannot rely on census race data, but Van Cleve did not assert he has initiated or plans to initiate imminently

any civil rights or discrimination actions that rely on race data collected and disseminated by the agencies. Thus, this injury is not concrete.

## B. Informational Injury

Van Cleve asserts he suffered, and will continue to suffer, an informational injury under both 44 U.S.C. § 3506(e) and 44 U.S.C. § 3563(a). Section 3506 is titled "Federal agency responsibilities." It is contained within subchapter I, "Federal Information Policy." This subchapter outlines its purposes, including improving government efficiency, organization, and decision-making. 44 U.S.C. § 3501. Sections 3506(e)(1) and 3506(e)(6) state that, "[w]ith respect to statistical policy and coordination, each agency shall--(1) ensure the relevance, accuracy, timeliness, integrity, and objectivity of information collected or created for statistical purposes . . . and (6) make data available to statistical agencies and readily accessible to the public." *Id.* §§ 3506(e)(1), (6).

Section 3563(a)(1) states that, "[i]n general[,] [e]ach statistical agency or unit shall--(A) produce and disseminate relevant and timely statistical information; (B) conduct credible and accurate statistical activities; (C) conduct objective statistical activities; and (D) protect the trust of information providers by ensuring the confidentiality and exclusive statistical use of their responses." *Id.* § 3563(a)(1).

The two primary cases in which the Supreme Court has squarely addressed "informational injury" are *Public Citizen v. U.S.*

*Department of Justice*, 491 U.S. 440 (1989) and *Federal Election Commission v. Akins*, 524 U.S. 11 (1998). *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021) (noting these cases do not control in the absence of a "public-disclosure or sunshine laws that entitle all members of the public to certain information"). In *Public Citizen*, the Court held the plaintiffs alleged a sufficiently concrete injury based on violation of a statute that required advisory committees to make their minutes, records, and reports available to the public. 491 U.S. at 446-47. There, the plaintiffs asserted the American Bar Association (ABA), which had advised the Department of Justice regarding potential judicial nominees, had denied their request for the names of such nominees and for the ABA's reports and minutes of its meetings regarding these nominees in order to monitor its workings and participate more effectively in the judicial selection process. *Id.* at 447, 449. Similarly, in *Akins*, the Court held the plaintiffs' asserted injury was concrete because they alleged a political committee violated a statute's requirement that it make public information about members, contributions, and expenditures, which the plaintiffs needed to evaluate candidates for public office. 524 U.S. at 21.

In *Trichell*, we concluded the plaintiff could not show a concrete injury from a statute giving them a right to receive truthful communications from debt collectors. *Trichell*, 964 F.3d at 1003-04. We reasoned that, in contrast to the statutes at issue in *Public Citizen* and *Akins*, which made certain information subject to public disclosure, this statute, which only stated debt-collection letters

may not be misleading or unfair, created no substantive entitlement to receive information from debt collectors. *Id.* at 1004. Similarly, in *Electronic Privacy Information Center v. U.S. Department of Commerce (EPIC)*, the D.C. Circuit held a violation of a statute that required federal agencies to, if practicable, publish a privacy impact assessment before initiating a new collection of personally identifiable information did not support an informational injury. 928 F.3d 95, 103 (D.C. Cir. 2019). It reasoned this statute was not meant to "vest a general right to information in the public" and, rather, "was designed to protect individual privacy by focusing agency analysis and improving internal agency decision-making." *Id.* In contrast, on remand from the Supreme Court, the Ninth Circuit concluded that, in enacting the Fair Credit Reporting Act (FCRA), Congress intended to protect consumers' interests in preventing the transmission of inaccurate information about them in consumer reports such that violations of the FCRA could constitute a concrete injury, noting the FCRA imposes a host of procedural requirements on consumer-reporting agencies and allows individuals to sue those who are non-compliant. *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1113-14, 1117 (9th Cir. 2017).

Van Cleve's alleged informational injury was not concrete because neither § 3506(e) nor § 3563(a) is a public-disclosure law that entitles all members of the public to certain information. The statutes focus on the intragovernmental sharing of information rather than the sharing of information between the government and the public. In the same way the statute in *EPIC* was not meant to

"vest a general right to information in the public" and "was [instead] designed to protect individual privacy by focusing agency analysis and improving internal agency decision-making," § 3506(e) was primarily intended to improve government efficiency, organization and decision-making by "ensur[ing] the relevance, accuracy, timeliness, integrity, and objectivity of information collected or created for statistical purposes" and by "mak[ing] data available to statistical agencies and readily accessible to the public." 44 U.S.C. §§ 3506(e)(1), (6), *EPIC*, 928 F.3d at 103. Unlike the statutes in *Public Citizen* and *Akins*, which expressly required the disclosure of minutes, records, and reports of advisory committees and information about the members, contributions, and expenditures of political committees, respectively, neither statute here identifies any specific information, such as race data, to which all members of the public are entitled. *Public Citizen*, 491 U.S. at 446-47; *Akins*, 524 U.S. at 21. Instead, they refer to "data" and "information" in general. 44 U.S.C. §§ 3506(e)(1), (6); 44 U.S.C. § 3563(a). Both § 3506(e) and § 3563(a) only refer to the responsibilities of statistical agencies, and unlike the statute in *Spokeo II*, neither statute provides a mechanism for members of the public to seek disclosure of certain information or imposes a specific procedural requirements on agencies. *Spokeo II*, 867 F.3d at 1113-14.

## C. Census Degradation

In *Department of Commerce v. New York*, the Supreme Court held that several states had standing when they sued to prevent the reinstatement of a question about citizenship on the 2020

census questionnaire, which they claimed would depress the census response rate, lead to an inaccurate population count, and, consequently, result in a loss of federal funds that are distributed based on state population.  139 S. Ct. 2551, 2565 (2019).  The Court reasoned that the loss of federal funds was a sufficiently concrete and imminent injury to satisfy Article III.  *Id.*

Contrary to Van Cleve's argument the mere occurrence of "census degradation" creates standing, *Department of Commerce v. New York* held the state's loss of federal funds *resulting from* census degradation established a concrete injury.  *See id.*  Van Cleve's assertion that census race data is inaccurate or will be inaccurate in the future, without more, does not establish a concrete injury, nor does it show that any inaccuracies have affected Van Cleve personally.

## II.  CONCLUSION

The district court did not err by concluding Van Cleve lacks standing.  None of his theories of standing, based on harm to his interests as an attorney, informational injury, and "census degradation," satisfied both the concreteness and particularization elements required of a valid injury in fact.  Accordingly, we affirm.[5]

**AFFIRMED.**

---

[5] Van Cleve's Motion to Expedite Appeal is DENIED as moot.