[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11659

Non-Argument Calendar

_____

MELANIE ORTIZ,

Plaintiff-Appellant,

versus

CITY OF MIAMI,
a Florida municipal corporation,
RODOLFO LLANES,
individually,
JAVIER ORTIZ,
individually,
FABIO SANCHEZ,
individually,
MIAMI FRATERNAL ORDER OF POLICE, et al.,,

Defendants-Appellees,

JORGE COLINA, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-25132-RNS

_____

Before ROSENBAUM, JILL PRYOR, and LAGOA, Circuit Judges.

PER CURIAM:

Melanie Ortiz, a former City of Miami (the "City") police officer, appeals the district court's order dismissing her claims against the City, the Miami Fraternal Order of Police (the "FOP"), Rodolfo Llanes, Fabio Sanchez, and Javier Ortiz.  Ortiz also appeals the district court's order denying her motion for reconsideration. After careful review, we affirm the dismissal of Ortiz's claims and the denial of reconsideration.

## I.    FACTUAL AND PROCEDURAL HISTORY

Ortiz was employed as a police detective with the City since at least 2013.  During 2013 and 2014, Ortiz was assigned to patrol

duty in Little Havana.  A collective bargaining agreement between the City of Miami and the FOP governed Ortiz's employment.  In December 2016, the Federal Bureau of Investigation arrested several City employees, including one police officer and two police aides, following an investigation into a scheme in which tow-truck operators would bribe police officers.  The City suspended three police officers in relation to the alleged bribery scheme but made no arrests.  Ortiz was not suspended at that time.

In December 2017, the City's Internal Affairs Section summoned Ortiz to provide a statement in connection with the bribery scheme.  Ortiz "initially thought that she was being interviewed regarding what she had observed others do when she had been assigned to patrol in Little Havana in 2013–2014."  After Ortiz arrived at the Internal Affairs office with her unidentified FOP representative, Sergeant Fabio Sanchez, a City employee, called her FOP representative aside for a private conversation.  Her FOP representative then informed her that he would not be able to represent her, but that Javier Ortiz, the FOP president, would be her representative.

Melanie Ortiz returned to the Internal Affairs office on December 16, 2017, and Javier Ortiz served as her FOP representative. During the meeting, Javier Ortiz denied Melanie Ortiz's request to review her file and told her that "[h]er only option to avoid going to jail—and having her daughter learn about her arrest through the media—would be to immediately and irrevocably resign." Javier Ortiz also stated that a FOP lawyer could not represent Ortiz.

Ortiz attempted to go downstairs to her car to call another police officer or superior to help her, but Sergeant Sanchez told her she could not leave the Internal Affairs office. Javier Ortiz provided Ortiz with the following resignation memorandum, which Ortiz signed:

> I, Officer Melanie Ortiz PIN 29186 voluntarily resign with no threats, rewards or promises from my position as a Police Officer with the City of Miami Police Department. This redline memorandum is irrevocable and my resignation will be effective immediately. I have spoken to my representative of choice, Lieutenant Javier Ortiz who is the President of the Miami Fraternal Order of Police. I am resigning for personal reasons and believe that this is the best option for myself and my family.

Ortiz's resignation was accepted by then-Chief of Police, Rodolfo Llanes. Four other City police officers subsequently resigned using "nearly verbatim documents." Those officers included: (1) Michael Bode, a former police officer "who actually had accepted [bribes]"; (2) Article Peoples, who was relieved of duty in 2014 during the bribery investigation but was never criminally charged; and (3) Yesid Ortiz and Reynaldo Irias, who both resigned after being summoned by Internal Affairs and were not criminally charged in relation to the bribery scheme.

Article 8.1.D of the FOP's collective bargaining agreement with the City, which is similar to Florida Statute § 112.532(1)(d),[1] provides the following guidelines for investigations that could lead to disciplinary action: (1) the officer must be informed of the nature of the investigation before any interrogation begins; (2) all identifiable witnesses shall be interviewed prior to the investigative interview of the accused; and (3) the evidence and complaint must be provided to the accused officer before any interview of that officer. After the officer's interview, Internal Affairs then makes recommendations as to guilt or innocence and appropriate punishment to the Chief of Police. After the Chief's decision is made, a police officer can appeal to the Civil Service Board for a vote on the issue of guilt.

On December 16, 2020, Ortiz filed a complaint against the City of Miami, the Order of Police, and several individual defendants. On May 17, 2021, Ortiz filed a second amended complaint

---

[1] Section 112.532 sets forth the rights and privileges of all law enforcement officers. Subsection (1)(d) provides, in relevant part:

> The law enforcement officer . . . under investigation must be informed of the nature of the investigation before any interrogation begins . . . . All identifiable witnesses shall be interviewed, whenever possible, prior to the beginning of the investigative interview of the accused officer. The complaint, all witness statements, including all other existing subject officer statements, and all other existing evidence . . . must be provided to each officer who is the subject of the complaint before the beginning of any investigative interview of that officer. . . .

against the City of Miami, Rodolfo Llanes, Javier Ortiz, Fabio Sanchez, and the FOP (collectively, "Defendants"). Ortiz claimed that Defendants denied her due process in violation of 42 U.S.C. § 1983 (Count I) and that Defendants conspired to violate her constitutional rights (Count II). On May 28, 2021, Defendants filed a motion to dismiss the second amended complaint. Defendants argued dismissal was appropriate as to Count I because: (1) Ortiz's § 1983 claims related to the FOP and Ortiz failed to plead the requisite "state action" because the FOP and Ortiz, a labor union and labor union president, are private actors; (2) Ortiz's § 1983 claim failed to plead a requisite "constitutional violation" as Ortiz failed to invoke any of her rights to either a pre or post-deprivation hearing; (3) Llanes and Sanchez, as governmental officials, are entitled to qualified immunity; and (4) Ortiz failed to allege that the City had a custom or policy that constituted deliberate indifference to a recognized constitutional right. As to Count II, Defendants argued that the second amended complaint failed to allege a § 1983 conspiracy.

On December 2, 2021, the district court granted the Defendants' motion to dismiss with prejudice.[2] For Count I, as to Llanes and Sanchez, the district court determined that they were entitled to qualified immunity because neither had committed any constitutional violation. Specifically, the district court reasoned that the

---

[2] The district court determined that Ortiz's failure to seek redress in state court did not bar her § 1983 claim against the FOP and the individual defendants.

memorandum identified by Ortiz's complaint was "insufficient to put Llanes on notice of the coercion [to resign]" and that Sanchez's private chat with an unidentified representative did not "amount to a constitutional violation." As to the § 1983 claim pertaining to all Defendants, the district court determined that the complaint failed to allege a conspiracy between the state and private actors. The district court noted that "[c]ritically, the operative complaint does not allege that Sanchez and Javier Ortiz communicated at any point during the relevant time period, much less that they reached an understanding." Declining to "infer that because Sanchez recommended Javier Ortiz be the representative at the interview, that the two reached an understanding to deprive Ortiz of her due process rights," the district court concluded that the complaint did not allege a conspiracy. As to Javier Ortiz and the FOP, the district court concluded that they were not acting under state color.

The district court also determined that Ortiz's complaint did not state a claim for municipal liability under § 1983 because she did not identify any official policy of coercing employees to resign and because Llanes could not have been part of an unofficial policy as he was not the final policymaker. For those reasons, the district court dismissed Count I. As to Count II, the district court dismissed the conspiracy claim for the same reasons as it dismissed the conspiracy claim under § 1983—insufficient evidence of such a conspiracy.

On January 3, 2022, Ortiz filed a motion for reconsideration. The district court denied this motion, finding no manifest error of fact or law in the previous order.  Ortiz timely appealed.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's order of dismissal, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005).[3]  A complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.    ANALYSIS

Ortiz argues that the district court erred in dismissing her claims against the City of Miami, former-Police Chief Rodolfo Llanes, Internal Affairs Sergeant Fabio Sanchez, the FOP, and the FOP President Javier Ortiz.  We address arguments relating to the parties in turn.

---

[3] We review a district court's denial of a motion for reconsideration for abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007). Although Ortiz seeks reversal of the order denying reconsideration, she makes no arguments in her briefing that pertain to the order denying reconsideration nor the correct standard of review.  As such, we consider any argument as to that order abandoned. *Tanner Advert. Grp., L.L.C. v. Fayette County*, 451 F.3d 777, 785 (11th Cir. 2006) (stating that issues not clearly designated in the initial brief are considered abandoned).

### A.  The City of Miami

As a municipality, the City cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693–94 (1978).  "There are, however, several different ways of establishing municipal liability under § 1983." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016).  A municipality can be liable for official policies enacted by its legislative body. *McKusick v. City of Melbourne*, 96 F.3d 478, 483 (11th Cir. 1996).  "Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure." *Hoefling*, 811 F.3d at 1279.

Ortiz's complaint fails to state a claim for municipal liability. Nowhere in her complaint does she identify an official policy of prompting employee resignations in the manner described.  Therefore, in order to hold the City liable, Ortiz must point to a practice "so permanent and well settled" that it constitutes a custom or usage with the force of law. *Monell*, 436 U.S. at 691.  As with the failure to identify an official policy, such an allegation is lacking in her complaint.  Melanie Ortiz alleged that the City had a policy of conspiring with the FOP and Javier Ortiz to deprive police officers of their due process rights by coercing resignations.  The problem with Ortiz's argument, however, is that the complaint relies on then-Chief Llanes's acceptance of her resignation as the City's connection to the conspiracy.  But Llanes did not adopt any policy related to police resignations by accepting what, under the

allegations of the complaint, was a seemingly voluntary resignation, and the complaint did not allege that he had any knowledge of the alleged resignation practice.

Ortiz argues that such approval and knowledge can be "reasonably inferred" because he was the "chief of a police department that had a collective bargaining agreement specifying elaborate pre[-]deprivation and post[-]deprivation procedures" and because the form-letter resignation "contained no rational explanation as to why she would waive all of those pre[-]deprivation and post-deprivation procedures." We disagree. First, there is an explanation as to why she would waive those procedures, as the resignation letter states that Ortiz was "resigning for personal reasons and believe[d] that this is the best option for myself and my family." Second, the fact that Llanes's department had procedures as to disciplinary hearings in no way implies his approval of coerced resignations. If anything, those disciplinary procedures would lead Llanes to assume that the resignation was not coerced absent further information. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights"). Because Ortiz's complaint fails to mention a policy or custom adopted by the City, the allegations are insufficient to create municipal liability.

Therefore, the district court did not err in dismissing Ortiz's § 1983 claim against the City of Miami.

### B. Llanes and Sanchez

Next, Ortiz alleges that Llanes and Sanchez violated her due process rights under § 1983.  The district court determined that they were entitled to qualified immunity because the second amended complaint failed to allege that Llanes or Sanchez committed any constitutional violations.  While Ortiz urges reversal of the district court's order, she makes no arguments relating to qualified immunity in her initial briefing and makes a short nonsensical argument on qualified immunity in her reply briefing.  As such, we consider the qualified immunity issue abandoned.  *See Tanner Advert.*, 451 F.3d at 785; *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014) (explaining that a party fails to adequately brief a claim when she does not plainly and prominently raise it, e.g., by devoting a discrete section of his argument to those claims).  And because we find that Ortiz has abandoned any argument as to qualified immunity, we affirm the dismissal of Ortiz's due process claim under § 1983 against Llanes and Sanchez.

### C. The FOP and Javier Ortiz

Finally, Ortiz alleges that the FOP and Javier Ortiz violated her due process rights under § 1983.  To state a claim under § 1983, a plaintiff must plausibly allege (1) a deprivation of a federal right and (2) that the deprivation was committed under the color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  Defendants can only satisfy the second prong if "the party charged with the deprivation [was] a person who may fairly be said to be a

state actor." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).

"[T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State," as "[p]rivate actors, jointly engaged with state officials, are acting under the 'color of law' for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (quoting *Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). Ortiz argues that the FOP and Javier Ortiz, although private actors, became state actors by acting in concert with the state officials in depriving her of constitutional rights. The district court, however, determined that the allegations did not support such a conspiracy between the private and state actors in this case.

We agree with the district court, as Ortiz's complaint indeed fails to allege a conspiracy between the FOP, Javier Ortiz, and the City. The only fact alleged in the second amended complaint relevant to such a conspiracy is the private conversation between Sanchez and Ortiz's original FOP representative, in which Sanchez recommended Javier Ortiz to be the representative at Ortiz's next interview. But we cannot infer from a recommendation on union representation that the two reached an understanding to deprive Ortiz of her constitutional due process rights. Without a

sufficiently alleged understanding between the private actors and state actors, the FOP and Javier Ortiz cannot be held liable under § 1983.

The district court thus did not err in dismissing the § 1983 claims against the FOP and Javier Ortiz.[4]

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order dismissing Ortiz's claims and its order denying her motion for reconsideration.[5]

**AFFIRMED.**

---

[4] Count II for conspiracy against all Defendants was properly dismissed for the same reasons outlined here.  Ortiz failed to allege an actual agreement or understanding to deprive her of her constitutional rights.

[5] The FOP and Javier Ortiz filed a Motions for Sanctions against Melanie Ortiz.  Although Ortiz's briefing is disorganized, it is not utterly devoid of merit.  As such, we deny the motion.